JOSEPH JAMES TIERNAN *et al.*, Petitioners-Appellees, *v.* BERNARD W. STEWART, Defendant-Appellant.

(No. 74-36; ▮▮▮▮▮▮▮▮▮

Second District (2nd Division)—November 13, 1975.

Arthur Charles Holt, of Waukegan, for appellant.

Robert M. Bollman, of Diver, Ridge, Brydges & Bollman, of Waukegan, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Lake County, Illinois, entered on the amended petition of Joseph James Tiernan and Wanda Faye Tiernan, his wife, to adopt Baby Boy Russell, a minor child who had been born out of wedlock. The child's mother, Yvonne Russell, had executed a consent to the adoption, and her parental rights had been terminated by interim order. The natural father, Bernard W. Stewart, who was made a party defendant by the amended petition, did not sign a consent but contested the adoption and sought to recover the child. The amended petition alleged that the defendant was the father of Baby Boy Russell, and alleged, further, "That said Bernard Stewart, father of said minor child is unfit to have said minor child and is an unfit person in that he has abandoned said child and has failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare." The defendant filed an answer in which he admitted that he was the father of the child but denied that he was unfit as alleged, and a hearing took place on the question of his fitness. The trial court entered an order which found "That Bernard W. Steward [*sic*], father of said child, is unfit to have the child sought to be adopted and that it is to the best interest and welfare of said child, Baby Boy Russell, that he be adopted by the Petitioners, Joseph James Tiernan and Wand [*sic*] Faye Tiernan, his wife, and that there is no just reason for delaying enforcement or appeal." It is from this order finding him unfit that the defendant has now appealed.

The defendant contends that the evidence presented to the trial court did not show him to be an unfit person by reason of abandonment of the child, or lack of interest, concern, or responsibility for the child, or depravity; that unfitness by reason of depravity could not be found

without there having been an allegation of depravity in the amended petition; and that the decision of the trial court could not be based mainly or solely on what were the best interests of the child. The petitioners, on the other hand, argue that the decision of the trial court finding the defendant unfit was amply supported by the evidence; that no objection was made in the trial court that the evidence as to depravity was beyond the scope of the issues drawn by the pleadings, and leave could now be granted to amend the petition if this should be deemed necessary; and that the welfare and best interests of the child were required by statute to be kept in mind.

The defendant testified, at the hearing, that he had met the mother of the child sought to be adopted at a night club at Mount Prospect, Illinois. She was married at that time, but was separated from her husband. The defendant took her out for a couple of months. Then in March or April of 1971 they started living together in a mobile home on his father's farm, near Genoa City, Wisconsin. In November of 1971 they went away for a weekend, and afterwards told his parents they had got married. In October or November of 1971 her husband obtained a divorce from her. In January of 1972 she was taken back to Illinois by the defendant, because she wanted to live with her sister and work with the sister at a bar in Richmond, Illinois. This was against his wishes, he testified, because he wanted to marry her. He saw her afterwards for a while, but could not persuade her to return from the bar to the farm. In February of 1972 he learned she was pregnant. In May of 1972, for two or three weeks, they lived together again in the mobile home in Wisconsin, and then she rejoined her sister, at Wonder Lake, Illinois. He subsequently tried to reach her but was unable to find her.

Efforts thereafter were made by the defendant and by his father to reach her through members of her family, but they did not succeed in getting in touch with her before the birth of the child. The defendant did not learn that the child had been born until the middle of November, 1972, when it was about a month old. He then was served with papers in the adoption proceedings. By that time the child was in the custody of the petitioners, and they would not let him see it. He at first told them that he couldn't take care of a baby, that he didn't think the baby was his, and that he would sign a consent to its adoption by them. Afterwards he decided that the child was his because he had been with the mother on a short trip to New York at the probable time of conception. He thereupon employed an attorney to contest the adoption, located some baby-sitters, and bought some baby furniture.

From the testimony given by the defendant at the hearing it appears,

further, that he had been convicted of grand theft in Wisconsin in 1970, shortly after getting out of military service, because of his having stolen a riding lawnmower. Also, he had been convicted of criminal trespass, in 1972, having been found asleep in someone else's car. Earlier, while in the navy, he had been disciplined twice for having been absent without leave. He also admitted to other types of offenses, "speeding tickets, like that." He attributed all his problems to alcohol, but said his drinking had for some time been under control.

In addition to the testimony given at the hearing by the defendant and by the petitioners, it was stipulated that the court could admit into evidence and consider a written report filed by the Walworth County Department of Social Services, Elkhorn, Wisconsin. The parties stipulated that they waived and released all error occasioned thereby and waived the right of cross-examination of the investigator and persons interviewed by him, and agreed that they could bring in rebuttal evidence. The report contained the information that following graduation from high school, the defendant began to "sow some wild oats," and after he got out of the service, "the lid really blew off" and he was "continually involved in all kinds of questionable activities." It mentioned one speeding violation, his conviction of grand theft after stealing the riding lawnmower, and the conviction for criminal trespass. It described him as not a dependable or cooperative probationer, and commented that there was a pervasive thread of doubt as to his emotional maturity and his ability to settle down at that time. It added, however, that there were "indications that he is not acting out as badly as he used to."

Following the hearing the trial judge issued a memorandum of opinion, dated September 7, 1973, in which he reviewed the evidence very briefly and then stated: "Based on his own testimony and the report of the Walworth County Probation Department, it is the Court's opinion that Bernard Stewart, the admitted natural father of Baby Boy Russell, is an unfit father to have said child in that the record indicates he abandoned said child and that his prior drinking habits and criminal record indicate a degree of depravity sufficient to deprive him of his rights to the custody and care of this child. Further, that it is to the best interest and welfare of Baby Boy Russell that he be adopted by the Petitioners, Joseph James Tiernan and Wanda Faye Tiernan, his wife. The attorney for the adopting parents is requested to prepare the appropriate Order in compliance with this Opinion." Thereafter an order was entered, dated September 24, 1973, and bearing the notation that it was approved as to form by the attorney for the defendant, and it is that order from which this appeal has been taken.

■■ In our examination of the record in this case to determine whether the trial court should be held to have committed error for one of those reasons given to us, we have had in mind what in another recent adoption case was said: "[W]e are not confronted with a review of the case for the purpose of determining whether we, under similar circumstances, would make the same finding as did the trial court. It is settled appellate procedure that the finding of the trial court will not be disturbed unless it is palpably against the weight of the evidence." (*Townsend v. Curtis*, 15 Ill.App.3d 209, 212.) In an even more recent case dealing with adoption the court declared: "It is not superficial rhetoric for us to state that we must give great weight to the result reached by the trial court where the witnesses were seen and observed." *In re Grant*, 29 Ill. App.3d 731, 737.

It appears to us that of those various grounds for a finding of unfitness which are listed in section 1 of the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, § 9.1—1), depravity most readily finds support in the evidence in this case. As to some of the other possible grounds, the evidence is less persuasive. Depravity has been defined as "an inherent deficiency of moral sense and rectitude." (*Stalder v. Stone*, 412 Ill. 488, 498.) It may be established by a series of acts or a course of conduct indicating a deficiency in moral sense and showing either an inability or an unwillingness to conform to accepted morality. (*Taylor v. Starkey*, 20 Ill.App.3d 630, 633.) As the trial judge pointed out in his memorandum of opinion, the defendant lived and cohabited with the mother of Baby Boy Russell for a substantial time both prior to her divorce from her former husband and subsequent to that divorce, without benefit of marriage; was in trouble in the navy and in more serious trouble afterwards; and had a drinking problem which the trial judge may not have been persuaded he had mastered. We believe that the testimony at the trial and the report from Wisconsin presented enough instances of misconduct of various degrees of seriousness to permit the trial judge, who could also observe the witnesses, to find the defendant unfit by reason of depravity, and that the trial judge's order was not palpably contrary to the manifest weight of the evidence.

■■ The defendant raises the objection, in this court, that unfitness by reason of depravity could not be found by the trial court in the absence of an allegation of depravity in the amended petition. However, there was no objection at the hearing to the evidence of depravity on the ground that it was beyond the scope of the issues drawn by the pleadings. It is clear from the testimony and the memorandum of opinion that depravity was made an issue in the trial court and was ruled upon there.

We therefore find that the defendant's objection relating to the petition was waived. (See *Shumak v. Shumak*, 30 Ill.App.3d 188, 192; *People ex rel. Baumgarten v. Krueger*, 253 Ill.App. 372, 378.) We note that this court could allow amendment of the petition if it were necessary. See *Fowler v. Fowler*, 26 Ill.App.3d 313, 316; *Thorpe v. Thorpe*, 48 Ill.App.2d 455, 461-62; *Kijowski v. Kijowski*, 36 Ill.App.2d 94, 93-97.

The defendant also raises the objection that the trial court's decision could not be based mainly or solely on what the best interests of the child seemed to be. It is established that a court cannot grant an adoption solely on the basis of the best interests of the child, without a consent or a finding of unfitness. (*In re Petition to Adopt Cech*, 8 Ill.App.3d 642, 645.) But it has also been pointed out that because of the specific directions contained in the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, §§ 9.1—15, 9.1—20a), a court must give prime consideration to the welfare and best interests of the child involved. (*In re Grant*, 29 Ill.App.3d 731, 736.) Since in this case there was a finding of unfitness based on sufficient evidence, and since the Adoption Act required the court to have the child's welfare and best interests in mind, we cannot find that the trial court erred in so doing.

For the reasons stated, the order of the Circuit Court of Lake County is affirmed.

Order affirmed.

RECHENMACHER, P. J., and SEIDENFELD, J., concur.