**John Munson Young and Nina Maxine Young, Plaintiffs-Appellees, v. Belinda Jane Prather, a Minor, and Velma Faye Prather, Defendants-Appellants.**

**Gen. No. 11,100.**

Fourth District.

March 25, 1970.

Lewis, Blickhan & Garrison, of Quincy, for appellant.

Schneidman, Keefe & Snowden, and A. L. Pezman, of Quincy, for appellees.

SMITH, J.

This is an appeal by the natural mother from a decree of adoption of her five-year-old daughter, Belinda, by the mother's sister and her husband. While other errors are assigned, we deem it necessary to discuss only the question of whether or not the evidence in the record is sufficient to support the decree. We think not.

Belinda was born of her mother's prior marriage, and her father consented to the adoption. Her mother opposed and contested the adoption. Under these circumstances it is clear from the statute and the decisions that the evidence must show by its preponderance that the natural parent is unfit for one of the reasons set forth in the statute to authorize adoption without the parents' consent. We have had oc-

casion recently to discuss this question in two cases and what was said in each of the two cases need not be repeated. See Carlson v. Oberling, 73 Ill App2d 412, 218 NE2d 820; Robinson v. Neubauer, 79 Ill App2d 362, 223 NE2d 705. The statute, Ill Rev Stats 1967, c 4, § 9.1-8, states: "Except as hereinafter provided in this Section, consents shall be required in all cases, unless the person whose consent would otherwise be required shall be found by the court to be an unfit person as defined in Section 1 of this Act." Section 1 defines an unfit person as follows: " 'Unfit person' means any person whom the court shall find to be unfit to have a child sought to be adopted, the grounds of such unfitness being any one of the following: . . . (h) Depravity." The exceptions mentioned in the statute and other enumerated grounds for unfitness are not here applicable. The only applicable grounds for unfitness is depravity—the petition so charged—and the court granted the petition on such grounds. Neither the charge in the petition nor the finding of the court is supported by the evidence.

The term "depravity" has been defined by our Supreme Court in Stalder v. Stone, 412 Ill 488, 107 NE2d 696, and in 26A CJS, p 492, as "an inherent deficiency of moral sense and rectitude." Rectitude is defined as "rightness of principle or practice." The American College Dictionary, Harper and Brothers. As we read Stalder, a single deviation from moral principles does not per se establish depravity. The acts constituting depravity within the meaning of the statute must be of sufficient duration and of sufficient repetition to establish a "deficiency" in moral sense and either an inability or an unwillingness to conform to accepted morality. Likewise, Stalder recognizes the superior right in a parent to the custody of its child and where unfitness of the natural parent is shown by the evidence to be clear and satisfactory, then the natural right of the parent to the child must yield to the best interest of that child.

In our determination of this case, we need not discuss the fitness of the adoptive parents nor the quality of the home in which they reside. Neither do we relate nor discuss in detail the life of the defendant mother prior to the time she entered the Macomb County Jail in January 1966 charged with burglary. She was convicted and sentenced to the reformatory at Dwight and released on January 13, 1967. She returned to her sister's home and married her present husband in November 1967. She was first married at the age of 15, was a mother of five children, was twice divorced, and her conduct up to and including the burglary may be defined as considerably less than exemplary. By contrast, her behavior in the penitentiary and her behavior and conduct since that time are exemplary except for two or three minor incidents which are referred to as an indication of a continuation of depravity. It seems to be the petitioners' point of view that once depraved—always depraved. Assuming for the moment that the evidence establishes depravity prior to her admission to Dwight, the only factors in this record that suggest such depravity continues are minor violations of her curfew hour on parole, a bicycle ride where she rode a bicycle in the streets of Ripley, Illinois, in the evening in her shorty pajamas and a housecoat that reached her knees, a charge that she urinated on the back of her cousin after her daughter had done so and this incident is explained by the fact that actually it was only a practical joke and she had wet a Kleenex and squeezed the water on the back of her cousin, and lastly, that she stayed out in the car with her present husband a couple of times overnight. On one instance her sister locked her out of the house and on another occasion they all worked together papering a home of the petitioner until about 3 a. m. and she stayed out with her present husband the rest of the night. Both the defendant and her present husband denied any impropriety on either occasion.

To characterize these incidents as evidence of a continuation of preexisting depravity does not have the clear and convincing ring required to terminate the parent-child relationship by adoption. Oeth v. Erwin, 6 Ill App 2d 18, 126 NE2d 526; Smith v. Andrews, 54 Ill App2d 51, 203 NE2d 160.

It is clear from the testimony that the defendant began her rehabilitation in the penitentiary. She maintained her contact with her children and her family. She asked the petitioners to take care of Belinda when Belinda's father obtained a divorce, on the grounds of conviction of a felony. On her release from the reformatory, she returned to her sister's home, worked in Rushville and Mt. Sterling and showed attention, love and affection for her children. They were taken to her at the reformatory in Dwight. Her employers, her husband and her mother-in-law testified in her behalf as to her character and industry, that she was a good housekeeper and a fit person to have the custody of the children. Belinda's older brother is in the custody of the defendant mother. The petitioners surrendered the boy on demand, but refused to give up Belinda because the court had awarded them custody of Belinda in the divorce proceedings while the mother was in Dwight. The defendant's present husband is employed full time at a good salary and is providing a home—a clean home—and wants to adopt the children. Significant also is the fact that the present petition for adoption was filed about three days before the marriage of the defendant to her present husband.

In Thorpe v. Thorpe, 48 Ill App2d 455, 198 NE2d 743, the court holds that in an adoption proceedings clear and convincing proof of the unfitness of a natural parent must be established. It is also significant to note that the petitioning sister who now asserts the depravity of the mother was asked on cross-examination that when the mother made efforts to obtain her rights in her two children, the Park boys, immediately upon her

return from Dwight "you thought she was fit and proper to have custody of her two Park boys at that time, didn't you?" The answer was: "Yes. I thought she was." The witness then stated that after they observed her actions which we have described above that "we didn't think so." Accepting every bit of the testimony of the petitioners as to conduct following release from the penitentiary as true, it falls short of clear and convincing evidence that depravity on the part of the mother existed at the time of the petition or at the time of the decree. The defendant mother is still on parole and custody jurisdiction of Belinda has been reserved by the divorce court pending the outcome of this proceeding. The welfare of Belinda is protected. The unfitness required by the adoption statute to terminate the parent-child relationship does not appear from this record. If depravity existed prior to Dwight, it has now left the scene. Its departure should not take with it the loss of a mother's right to her children. Yesterday's black clouds do not eclipse today's sunlight. The decree for the adoption is reversed.

Reversed.

CRAVEN, P. J. and TRAPP, J., concur.