504 P.2d 1372

In re STATE of Utah, in the Interest of Joseph Gavino VALDEZ, age five years, and Ernestina Valdez, age three years, Minors, Gavino Joe Valdez, Appellant.

No. 12826.

Supreme Court of Utah.

Jan. 3, 1973.

Bernard L. Rose, Salt Lake City, L. G. Bingham, Ogden, for appellant.

Vernon B. Romney, Atty. Gen., Kent T. Yano, Asst. Atty. Gen., Salt Lake City, for respondents.

CALLISTER, Chief Justice:

Gavino Joe Valdez appeals from an order of the Juvenile Court, wherein his two minor children were adjudged "dependent" and placed in the temporary custody of the Utah State Division of Family Services for placement in a foster home.

Mr. Valdez was accused of killing his former wife, the mother of the children here involved, and was incarcerated in the Weber County Jail, without bail, on a charge of first degree murder. At the time of the mother's death, a maternal aunt, Patricia Ann Gonzales, and her husband, Vincent, took the children to their home where they have remained. The father subsequently made arrangements for his sister, Olivia Gonzales, and her husband, John to take the care, custody, and control of the children, which so far has been unattainable and is the reason for the instant appeal.

The maternal aunt took the children into her home on August 27, 1971; thereafter, on September 10, 1971, she joined with her sisters in filing a petition before the Juvenile Court. The petition contained an allegation that the father was incarcerated and the mother was deceased, and that there was no one to care for the minor children. The petitioners sought a determination as to the custody of the children and provision for their support. Prior to service of this petition on the father, a petition for a writ of habeas corpus was filed in the district court on September 14, 1971; a hearing thereon was held on September 17, 1971. According to the findings of the Juvenile Court, the district court "left" the matter of the custody of the children with the Juvenile Court, and the hearing on the petition for a writ of habeas corpus was continued without date.[1] After the district court hearing, the father appeared in the Juvenile Court and accepted service of the petition alleging the dependency of his children. On September 21, 1971, the Juvenile Court made an order placing the children in the temporary custody of the Utah State Division of Family Services and continued the matter. On October 5, 1971, the court heard reports concerning Patricia and Vincent Gonzales and Olivia and John Gonzales and continued its prior order.

John and Olivia Gonzales filed a petition framed in adoption in the district court, and requested custody of the children on November 10, 1971. Thereafter, the natural father signed his consent to the adoption in open court.

The findings of the Juvenile Court recite that the natural father supported the custody request of his sister and brother-in-law in the hearings before that court; that the father had made arrangements with these relatives to take custody of the children and to provide for them, including his giving of consent to their adoption; and that the father opposed the petition of the maternal aunt and uncle. The court further found that the situation of the father was such, whether it occurred with or without fault on his part, that his children were dependent children, and that the court took jurisdiction from the date of the filing of the petition by virtue of the finding of dependency.

The Juvenile Court concluded that the children came within the statutory definition of dependent children; that the jurisdiction of the Juvenile Court was properly invoked; that the filing of the petition for a writ of habeas corpus did not deprive the Juvenile Court of jurisdiction; that the petition for adoption filed in the district court, wherein an order of custody was

1. The record before this court does not include any of the pleadings or proceedings before the district court; the sequence of these events is recited in the findings of fact of the Juvenile Court.

sought, with a consent signed by the father, did not remove the cause from the jurisdiction of the Juvenile Court; and that until a final determination of the criminal action against the natural father was made, it was in the best interests of the minor children that they remain in the temporary custody of the Division of Family Services and be placed in the home of the maternal aunt and uncle.

On appeal, the father urges that there was insufficient evidence to sustain the finding that his children were dependent and thus to confer exclusive, original jurisdiction on the Juvenile Court concerning this custody dispute; and that this matter was properly within the jurisdiction of the district court.

Section 55–10–77, U.C.A.1953, as amended 1965, provides that the Juvenile Court shall have exclusive, original jurisdiction concerning any child, who is dependent as that term is defined in Section 55–10–64; and to determine the custody of any child or appoint a guardian of the person or other guardian of any child who comes within the court's jurisdiction under other provisions of Section 77.

Section 55–10–64(18) defines "dependent child" as including a child who is homeless or without proper care through no fault of his parent, guardian, or custodian.

Section 55–10–64(7) defines "legal custody" as a relationship embodying certain specified rights and duties, included therein is the right to determine where and with whom a child shall live. Section 55–10–64(13) defines "deprivation of custody" as a transfer of legal custody by the court from a parent or the parents or a previous legal custodian to another person, agency, or institution.

The action of the Juvenile Court in this case deprived the natural father of his right to determine where and with whom his minor children should live and conferred said right on a state agency on the ground that the children were dependent, i. e., they were homeless or without proper care. The findings of the court acknowledge that the father had made arrangements with his relatives to provide and to care for the children (a social report on the paternal aunt and uncle indicated a fine, stable, comfortable home environment), but, nevertheless, the court found the children dependent.

 The Juvenile Court was created by statute and has jurisdiction only in the cases specified therein.[2] Its jurisdiction concerning custody and guardianship matters is strictly confined to those situations where its jurisdiction is invoked under Section 55–10–77; otherwise all disputes concerning custody and guardianship are

2. Anderson v. Anderson, 13 Utah 2d 89, 92, 416 P.2d 308 (1966).

within the jurisdiction of the district, court, which cannot delegate or divest itself of jurisdiction to the Juvenile Court.[3]

Section 55–10–78, U.C.A.1953, as amended 1965, provides:

. . . Nothing contained in this act shall deprive the district courts of jurisdiction in adoption proceedings.

Nothing contained in this act shall deprive the district courts of jurisdiction to appoint a guardian for a child, nor of jurisdiction to determine the custody of a child upon writ of habeas corpus or when the question of custody is incidental to the determination of a cause in the district court; provided that in case a petition involving the same child is pending in the juvenile court or the juvenile court has previously acquired continuing jurisdiction over the same child, the district court shall certify the question of custody to the juvenile court for determination.

A district court may at any time decline to pass upon a question of custody and may certify that question to the juvenile court for determination or recommendation.

■ Since a proceeding is commenced in the Juvenile Court by filing a petition, Section 55–10–83(1), in the instant action,

the case was pending at the time the petition for a writ of habeas corpus was filed. Under such circumstances, under the provisions of Section 55–10–78, the district court may certify the question of custody to the Juvenile Court for the purpose of evaluation. When this process is completed and the Juvenile Court has made findings and a recommendation, the matter should again be referred to the district court for final determination.[4]

Many aspects concerning the instant cause were discussed in the case of In re O'Hare's Guardianship,[5] wherein this court observed that upon the death of a mother, who had been awarded custody of the minor children in a divorce action, the right to their custody immediately vested in their father, their natural guardian, subject to divestment upon proof in a proper proceeding in a proper court that the natural guardian should not continue such custody. The grandfather had sought custody on the ground that the father was not a fit person. This court observed that the issue posed was whether the district court had jurisdiction to award custody in a guardianship proceeding, or whether a proceeding concerning custody must be initiated in the juvenile court.

This court stated that the district court had jurisdiction to determine whether the

3. State In re Thornton, 18 Utah 2d 297, 299, 422 P.2d 199 (1967).

4. In re State In Interest of Krums, 19 Utah 2d 156, 427 P.2d 751 (1967).

5. 9 Utah 2d 181, 341 P.2d 205 (1959).

father, the natural guardian, who admittedly had custody, should retain it. A mere allegation in a petition that a natural guardian is an unfit person does not prove that fact, nor does it prove a minor child is "neglected," "dependent," or "delinquent" as those words are construed, nor does it prove that the juvenile court has exclusive, original jurisdiction with respect to custody. This court explained that if evidence had been presented and accepted, indicating that at the time the father had custody that the children were actually neglected, dependent, or delinquent, the district court could and should have transferred the matter to the juvenile court. On the other hand, if no such condition were found to exist, the district court would have jurisdiction to perpetuate the custody in the father; or, if it found that for some one or more reasons, other than neglect, dependency, or delinquency, the custody should be shifted to someone else for the best interests of the children, the district court would have jurisdiction to accomplish that fact.

This court stated that the district court has inherent jurisdiction to award custody of children, except where the juvenile court is given by statute exclusive but limited jurisdiction. In addition to such inherent jurisdiction, the district courts have specific statutory jurisdiction in custody matters, e. g., separation and divorce (Section 30–3–10), habeas corpus proceedings (Section 55–10–78), and appointment of guardians of minors generally (Section 75–13–12). This court duly noted that under the Juvenile Court Act a custody matter may be referred to the Juvenile Court for recommendation; therefore, the cause was remanded to this district court to pursue, in its discretion, either procedure pointed out in the opinion.

The critical issue in the instant case is whether the facts found by the juvenile court show the children were dependent as defined by the legislature; otherwise the juvenile court was divested of jurisdiction to make any order in reference to the children except to dismiss the case and to revoke all previous orders.[6]

By the express terms of the statute (55–10–64(18)) dependency is determined by the present status of the child, that is, it is homeless and without proper care. The fact that the child is being provided for in the home of someone who is not the child's parent does not show dependency or neglect,[7] for the parent has the right to determine where and with whom a child shall live. In the case of In re State in Interest of Johnson[8] this court found a petition

6. State in the Interest of Graham, 110 Utah 159, 163, 170 P.2d 172 (1946).

7. State in the Interest of Graham, note 6, supra, see p. 169 of 110 Utah, 170 P.2d 172.

8. 110 Utah 500, 505–506, 175 P.2d 486 (1946).

alleging dependency insufficient, where the allegations were not directed toward the present status of the child, i. e., that he was homeless or destitute or without proper care, but was an attack upon the ability of the mother in the future to look after him.

■ In the instant action, there were no allegations or findings that the children were homeless or without proper care. The finding of dependency was premised solely on the inability of the father to furnish his children with his personal guidance and care because of his incarceration. The finding of the court that the father had arranged with his relatives to care and provide for the children completely rebuts the determination of dependency. The instant case is, in fact, a conventional custody dispute between the maternal and paternal relatives and is within the jurisdiction of the district court. The juvenile court erred in its determination that it had exclusive jurisdiction, and its order granting temporary custody to the Division of Family Services is null and void. This case is remanded to the Juvenile Court for its determination concerning the custody of the children, before reference back to the district court for final determination in the habeas corpus proceeding.

HENRIOD, ELLETT, CROCKETT and TUCKETT, JJ., concur.