80 Ill. App.3d 1144 (1980)
400 N.E.2d 1063
In re HANNIBAL ABDULLAH, a/k/a Hannibal Murray, a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
YUMBA LASUMBA, a/k/a Lonnie Abdullah, a/k/a Lonnie Murray, Respondent-Appellant.)
No. 15664.
Illinois Appellate Court  Fourth District.
Opinion filed February 11, 1980.
Marcia Rotunda, of Champaign, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Robert J. Biderman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Francis J. Davis, of Urbana, guardian ad litem.
Reversed and remanded.
*1145 Mr. JUSTICE CRAVEN delivered the opinion of the court:
The respondent, Yumba Lasumba, appeals from the trial court's order finding him to be an unfit parent by reason of depravity and authorizing the Illinois Department of Children and Family Services (DCFS) to consent to his child's legal adoption. The order appealed from effectively terminated all the respondent's parental rights with respect to his child, Hannibal Abdullah.
DCFS's amended petition alleges that the respondent is an unfit parent by "reason of depravity in that he has been convicted of the murder of the respondent's minor's mother, Anna Abdullah * * *." On appeal, the respondent contends that the respondent's conviction for murdering the child's mother does not clearly and convincingly support the trial court's finding of unfitness by reason of depravity.
To say that the record on appeal is brief is an understatement. At the April 5, 1979, adjudicatory hearing, the following evidence was presented.
James Schauer, an assistant State's Attorney for Champaign County, testified that he had participated in the trial of respondent for the murder of Anna Abdullah. Schauer said that the respondent was found guilty, his post-trial motion was denied, and he was sentenced to 60 years in the penitentiary. Schauer went on to say that Hannibal Abdullah was a child of the respondent and Anna Abdullah. And, at the time of the murder in August 1978, the child was three years old.
Respondent testified that he was the father of Hannibal Abdullah and he was appealing the murder conviction. He denied murdering Anna Abdullah. On cross-examination, respondent stated that at the time of the hearing he was incarcerated in the penitentiary. On questioning by the guardian ad litem, respondent stated that he had been convicted of battery in 1963 or 1964.
The issue this appeal presents us is whether the respondent's parental rights can be terminated solely upon the basis of his criminal conviction. We reverse the trial court and hold that parental rights may not be terminated solely on the basis of a criminal conviction.
Townsend v. Curtis (1973), 15 Ill. App.3d 209, 303 N.E.2d 566, held that a felony conviction is insufficient, in and of itself, to prove unfitness by reason of abandonment and desertion. Likewise, the court in In re Adoption of Kleba (1976), 37 Ill. App.3d 163, 166, 345 N.E.2d 714, 717, stated: "Conviction of a felony alone is not a statutory ground for adoption without the consent of a natural parent, and a finding of depravity cannot be based exclusively on the fact of a criminal conviction." Recently, this court held that "the mere fact that a parent has been convicted of a felony  even a number of felonies  is not sufficient to establish depravity." (In re Sanders (1979), 77 Ill. App.3d 78, 395 *1146 N.E.2d 1228, 1231.) Clearly, the applicable law of Illinois as enunciated by the appellate court is that parental rights may not be terminated solely upon the basis of criminal convictions.
 1 The trial court, of course, was bound to follow Illinois law as enunciated by the Illinois Appellate Court. (UMW Union Hospital v. UMW District No. 50 (1972), 52 Ill.2d 496, 288 N.E.2d 455; see Garcia v. Hynes & Howes Real Estate, Inc. (1975), 29 Ill. App.3d 479, 331 N.E.2d 634.) Thus, the trial court committed error when it terminated the respondent's parental rights solely upon evidence of his criminal conviction.
 2 Although children are not mere chattels of their parents, parents' rights in his, her, or their children are not to be taken lightly by the State. The drastic nature of the State terminating all parental rights forever demands that the State prove the parents' unfitness by clear and convincing evidence. In re Adoption of Rich (1977), 51 Ill. App.3d 174, 366 N.E.2d 575; In re Massey (1976), 35 Ill. App.3d 518, 341 N.E.2d 405.
When DCFS seeks to terminate parental rights by reason of depravity, or for that matter by reason of any ground, it has not met its burden by merely showing that the parent has been convicted of a crime, no matter how reprehensible. The label of a criminal conviction tells us little about the infinite combination of human conduct and circumstances that can be stereotyped by it. Perhaps proof of the factual evidence that was the basis of the conviction may constitute parental unfitness, but the mere fact of conviction does not. Here we have only the mere fact of conviction.
For the reasons stated herein, we reverse the trial court and remand for further proceedings.
Reversed and remanded.
Mr. PRESIDING JUSTICE MILLS, specially concurring:
In total agreement I am that the underlying grounds for parental unfitness must be clearly set forth and spelled out with certainty on the record of the case in which such finding is made. The simple, skeletal showing of a conviction  without some essential details and supportive facts  does not achieve the mark in my view.
In this case, the factual basis behind the respondent-father's murder of the mother of the infant will in all likelihood equate with "depravity," but it must certainly not be by mere inference, assumption, speculation, or presumption. To have unfitness and parental rights determined by such a slender reed as revealed by this record seems to me to be untenable.
Mr. Justice Green would read into the mere fact of conviction of the mother's murder (which appears in bare bones on the record) the *1147 statutory requirement of "wanton cruelty" since an extended sentence of 60 years was imposed. This, however, presumes too much and strains an already barren transcript. For all we know, that sentence may be erroneous and the record devoid of facts to support a conclusion of "wanton cruelty."
No  the facts supporting "depravity" and the unfitness must be lucidly and clearly spread out on the record. A reviewing court cannot review in a vacuum.
Mr. JUSTICE GREEN, concurring in part and dissenting in part:
I concur with the decision to reverse and remand the judgment of the trial court but would do so for a different reason and with a different mandate.
I interpret the majority to concede that proof that a person committed a sufficiently reprehensible felony in a sufficiently reprehensible manner may be the basis for a finding of depravity constituting parental unfitness. A single transaction whereby parents, in exchange for a substantial sum of money, permitted an adult male to take their 12-year-old daughter from Illinois to South Carolina to marry her has been held to be sufficient to support a finding of depravity. (In re Flynn (1974), 22 Ill. App.3d 994, 318 N.E.2d 105.) Here, as in that case, the respondent's wrongful act hit at the basis of the family relationship, murdering the mother. The extended sentence of 60 years' imprisonment which he received could only have been imposed if (1) he had previously been convicted of murder or (2) "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005-5-3.2(b)). The evidence here indicated he had no prior murder conviction. Because of the 60-year sentence, the respondent could not be paroled for 30 years (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003-6-3(a)(2)). Thus his wantonly cruel act was shown to have not only deprived the child of his mother but also placed himself in a position of being unable to perform most of his fatherly functions.
In Smith v. Andrews (1964), 54 Ill. App.2d 51, 63, 203 N.E.2d 160, 166, cert. denied (1966), 382 U.S. 1029, 15 L.Ed.2d 543, 86 S.Ct. 655, a trial court's determination of depravity was upheld on review. The appellate court stated that the evidence of surrounding circumstances of the offenses was skimpy but considered the fact that the defendant had offered nothing in mitigation to be significant. In reference to the rape conviction, the court stated, "We think the trial court could properly find that one convicted of that crime is inherently deficient in moral sense and rectitude." Here, the defendant presented no mitigating circumstances and his recently cruel murder of the child's mother would evidence an *1148 even much greater "deficiency of moral sense and rectitude." I can not imagine how further evidence of the circumstances of the murder here could negate the inherently depraved nature of the act. While it is said that proof of depravity must be clear and convincing (In re Rich), it has also been said that we should not set aside such a finding unless it is contrary to the manifest weight of the evidence (In re Flynn). Whatever the intermakeup of the foregoing rules, I consider the totality of the matters properly before the trial court to have justified its judgment.
I am concerned, however, with the possibility that the conviction might be upset in the future after the child had been adopted. The traumatic consequences of such an occurrence would be so great that extraordinary steps should be taken in order to mitigate that danger. Accordingly, I would remand with directions that the trial court vacate its grant of power to consent to adoption given DCFS and withhold that power until all avenues of direct appeal of defendant's conviction and sentence have been exhausted. If, at that time, the conviction and sentence have been upheld, the court should then grant DCFS the power to consent to adoption. If the conviction or the imposition of the extended sentence is reversed, the trial court should then grant a rehearing on the petition that is the subject matter of the appeal. I consider the trial court's inherent chancery powers to be sufficient to authorize such an order. People ex rel. Ryan v. Sempek (1958), 12 Ill.2d 581, 147 N.E.2d 295.
I realize that the conviction might be later upset upon collateral attack, but that possibility would be sufficiently remote to make the need of stability in the life of the child a matter of greater concern. I also realize that generally reversal of a conviction does not require a reversal when that conviction is used against the convict in a subsequent proceeding to impeach his testimony (People v. Bey (1969), 42 Ill.2d 139, 246 N.E.2d 287). There, however, the reversed conviction is at least somewhat collateral to the main issue in the case. Here the conviction is at the very heart of the case.