JERRY BRYANT *et al.*, Appellants, *v.* MICHAEL LENZA *et al.*, Appellees.— *In re* ANTHONY LENZA *et al.*, Minors.—(ANTHONY LENZA *et al.*, Appellees, *v.* MICHAEL LEE LENZA, Appellant.)

Third District   Nos. 78-471, 79-261 cons.

Opinion filed November 13, 1980.

Roman R. Okrei, of Dunn, Stefanich, McGarry & Kennedy, Ltd., of Joliet, for appellant Michael Lenza.

Winston J. Block, of Cirricione, Block, Krockey & Cernugel, P. C., of Joliet, for appellants Jerry Bryant and Marianna Bryant.

Edward F. Masters, of Robson, Masters, Ryan, Brumund & Belom, of Joliet, guardian ad litem.

Edward Petka, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE BARRY delivered the opinion of the court:

This case is a consolidation of two civil cases originating in the Circuit Court of Will County. The subject matter of both cases is the welfare of Anthony Lenza and Zachery Lenza, who are minors. Appellate case No. 78-471 is an appeal by prospective adoptive parents of the

Lenza children, Jerry Bryant and Marianna Bryant, from the dismissal of their petition to adopt these minor children. Appellate case No. 79-261 is an appeal by the natural father of the Lenza children, Michael Lenza, from a finding in a separate and subsequent proceeding from the attempted adoption, that his two minor children were dependent within the meaning of section 2—5 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—5). Although some of the relevant facts are common to both appellate cases, it would unduly complicate this opinion to recite the facts of each case together. Therefore, we will proceed with the first case chronologically to a decision before proceeding with the second case.

### APPELLATE CASE NO. 78-471

On March 29, 1977, Jerry and Marianna Bryant, who are husband and wife, filed a petition in the Circuit Court of Will County seeking to adopt the two Lenza children. At the time of the filing of the petition to adopt, Anthony Lenza was six years old and his brother Zachery Lenza was two years old. The two children had been in the custody of the Bryants since December 21, 1975, continuously up to the date of the adoption petition. The children's natural father, Michael Lenza, was incarcerated in the State of Missouri serving a life imprisonment sentence for his conviction of second degree murder (not premeditated) of Christina Lenza, the natural mother of the children who are the subject matter of this adoption proceeding. In May of 1979, the Missouri Court of Appeals, Eastern District, affirmed the conviction and sentence of Michael Lenza. *State v. Lenza* (Mo. App. 1979), 582 S.W.2d 703, *cert. denied sub nom. Lenza v. Missouri* (1980), 444 U.S. 1021, 62 L. Ed. 2d 652, 100 S..Ct. 678.

The petition to adopt and an amendment thereto filed by the Bryants alleged:

> 1. that the natural father of the children was unfit as a parent because he was convicted of the second degree (not premeditated) murder of Christina Lenza, the natural mother of the children;
> 2. that the natural father was incarcerated for a life sentence and has failed to maintain reasonable degree of interest, concern or responsibility as to the children's welfare; and
> 3. that the natural father deserted his children for a period in excess of three months;
> 4. that Michael had a violent temper as evidenced by his kicking in a door, removing his wife and child from their home and boasting about not having to pay income taxes.

Following the presentation of evidence in support of the Bryants' petition

to adopt, the trial court granted the motion of the father, Michael Lenza, for judgment holding that the Bryants had not proved their petition. The Bryants have appealed from that adverse judgment.

On appeal it is argued that the entry of judgment against the Bryants on their adoption petition is against the manifest weight of the evidence. The first and strongest theory of Michael Lenza's unfitness as a parent was his criminal conviction in Missouri for the murder of his children's natural mother. It is argued that the natural father is unfit because of depravity. Depravity is one of the statutory grounds for a finding of parental unfitness. It has been defined as " 'an inherent deficiency of moral sense and rectitude.' " (*Stalder v. Stone* (1952), 412 Ill. 488, 498, 107 N.E.2d 696, 701.) As we observed in *In re Buttram* (1978), 56 Ill. App. 3d 950, 372 N.E.2d 1135, "[d]epravity may be established by a series of acts or a course of conduct indicating a deficiency in a moral sense and showing either an inability or an unwillingness to conform to accepted morality." (56 Ill. App. 3d 950, 954, 372 N.E.2d 1135, 1138.) However, one prior felony conviction alone has been held to be insufficient to automatically constitute depravity. (*In re Adoption of Kleba* (1976), 37 Ill. App. 3d 163, 345 N.E.2d 714; *Townsend v. Curtis* (1973), 15 Ill. App. 3d 209, 303 N.E.2d 566; *Young v. Prather* (1970), 120 Ill. App. 2d 395, 256 N.E.2d 670; and *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 203 N.E.2d 160.) Even a conviction of murdering the child's mother has been held to be insufficient to establish depravity. *In re Abdullah* (1980), 80 Ill. App. 3d 1144, 400 N.E.2d 1063.

■■ In the proceeding below the trial court was informed merely of the fact that Michael Lenza had been convicted of second degree murder in Missouri. Quite correctly, the trial court pointed out that the mere fact of a conviction is insufficient to establish depravity in an adoption case. "In my opinion of the law, my finding of the law that one fact isolated by itself [*i.e.*, a murder conviction] does not establish depravity under the definition in our Adoption Statute. There must be other matters coupled with it or there must be a factual showing as to what the defendant did, non [*sic*] of which we have."

Although there was no error by the trial court in deciding this issue on the evidence (or rather lack of evidence) before it (*Abdullah*), on appeal the court has been provided with a certified copy of the decision of the Eastern District, Missouri Court of Appeals, affirming Lenza's conviction (*State v. Lenza* (Mo. App. 1979), 582 S.W.2d 703, *cert. denied sub nom. Lenza v. Missouri* (1980), 444 U.S. 1021, 62 L. Ed. 2d 652, 100 S. Ct. 678). This opinion contains the details surrounding Mrs. Lenza's death. Consequently, unlike *Abdullah*, where the factual basis of the defendant's conviction was not brought to the attention of either the trial

or appellate courts, this court is now informed of the underlying facts of Mr. Lenza's conviction.

■■ The question now arises as to whether, by taking judicial notice of the Missouri appellate decision ourselves, this court is to determine whether Mr. Lenza is depraved within the meaning of the Adoption Act (Ill. Rev. Stat. 1979, ch. 40, par. 1501(D)(i)), or whether we are to remand to the trial court for the purpose of making this determination. Certainly we would be justified in taking judicial notice of the underlying facts of Lenza's conviction contained in *State v. Lenza.* "Judicially noticeable facts may be noticed initially by the appellate court on review, * * * for the purpose of supplying gaps in the evidentiary record, either to save the case from reversal or to support a reversal of the trial court." (S. Gard, Illinois Evidence Manual Rule 2:22 (2d ed. 1979).) However, we are hesitant to take any action which could conceivably result in a reversal of a trial court when, on the evidence before it, no error was committed in reaching its decision. We therefore choose to remand this issue to the trial court with instructions that it take judicial notice of the underlying facts of Lenza's conviction as set out in *State v. Lenza* and make its depravity determination accordingly. By our disposition of this issue we do not intend to suggest to the trial court that it make any particular finding. The depravity determination is one which we are leaving solely to the trial court.

Although we are remanding this cause for a determination of depravity in light of the facts underlying Lenza's murder conviction, we believe the other issues raised by the Bryants which relate to the alleged depravity of Lenza are unaffected by our decision to have the trial court take judicial notice of the facts in *State v. Lenza.* Accordingly, we will dispose of the Bryants' other arguments relating to Lenza's alleged depravity on their merits.

Two of the other allegations of Michael Lenza's parental unfitness stemmed from the life sentence following his murder conviction, which resulted in his alleged inability to maintain a reasonable degree of interest, concern or responsibility as to the children's welfare and his alleged desertion of the children for a period in excess of three months. We have examined the evidence presented by the Bryants themselves, which indicates that even while Michael Lenza has been imprisoned he has made numerous attempts to contact his children through letters and certified mail and also by personal contacts in his behalf by his family, his attorney, and the Department of Children and Family Services. Michael Lenza also sent birthday cards and presents as well as Christmas presents to the children. The Bryants readily admitted that they knew where Michael Lenza was, but made no attempt to inform him of his children's

whereabouts or their condition. We recognize, as the trial court did, that the evidence was clear and convincing that the natural father made numerous attempts to contact his children and maintained more than a reasonable degree of interest, concern and responsibility for the children's welfare under the circumstances in which he found himself. It is the natural father's efforts to carry out his responsibilities rather than the success with which he meets them that is determinative. *In re Taylor* (1975), 30 Ill. App. 3d 906, 334 N.E.2d 194.

■■ The Bryants also claimed that Michael Lenza was unfit for deserting the children. It need not be explained that this natural father has not voluntarily left his children. His imprisonment is certainly involuntary and will not support a charge of unfitness based upon desertion for a period in excess of three months. Similarly, in the recent case of *In re Sanders* (1979), 77 Ill. App. 3d 78, 395 N.E.2d 1228, it was held that the father's imprisonment wasn't sufficient to show that he intended to abandon or desert his children.

■■ Finally the Bryants urged that Michael Lenza was unfit because of depravity for having a violent temper and boasting that he was not going to pay income taxes. Initially we note that the record contains no evidence that Michael Lenza did not pay his taxes. His boast of not paying taxes certainly does not amount to depravity. Several incidents depicting his bad temper introduced by the Bryants and their witness were equally capable of being interpreted in an exculpatory manner. Even in combination, the alleged violent temper and other alleged parental and moral defects of Michael Lenza cannot give rise to either a finding of depravity or parental unfitness. We believe the trial court was correct in dismissing the adoption petition of the Bryants as they failed to prove by clear and convincing evidence that the natural father had abandoned or disregarded his children or was depraved within the meaning of the Illinois Adoption Act (Ill. Rev. Stat. 1977, ch. 40, par. 1501(D)(i)).

For the reasons stated the judgment of the Circuit Court of Will County in appellate case No. 78-471 is affirmed in part, and remanded with directions.

Appellate Case No. 79-261

This action was brought by the People of the State of Illinois to determine whether the minor children, Anthony Lenza and Zachery Lenza, were dependent within the meaning of section 2—5 of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—5). Although this and the adoption proceeding were consolidated on appeal, they were tried and dealt with separately in the Circuit Court of Will County. After a hearing on the merits, the trial court found the Lenza children to be

dependent within the meaning of the Juvenile Court Act and made them wards of the court. The only facts presented at the juvenile dependency hearing consisted of three paragraphs of fact, stipulated to by the parties, with a fourth paragraph being added by order of the trial court. The facts were as follows:

"1. That the Respondent, the father of the children was incarcerated in Missouri.

2. That the mother of the children is deceased.

3. That the respondent gave his full power of attorney to his sister, Mrs. Marcia Bolte, to care for his children, and that Mrs. Bolte is ready, willing and able to provide that care.

4. That the court took judicial notice of the related adoption proceeding (Case No. W 77F 855 A, Appellate Case No. 78-471) and found that it was in the best interest of the children, Anthony and Zachery Lenza, to remain in the custody of the Bryants."

The natural father, Michael Lenza, has appealed from the dependency finding. The State's dependency petition alleged that the children were without a parent, guardian or legal custodian pursuant to section 2—5(1)(a) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(a)) and without proper care because of the physical or mental disability of the children's parents, guardian or custodian pursuant to section 2—5(1)(b) (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(b)). However, the order of the trial court specifically found that the Lenza children were dependent based upon section 2—5(1)(b) (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(b)), the children being without proper care because of the physical and mental disability of their father, resulting from his imprisonment, and their mother being deceased.

The natural father has phrased the two issues for review as follows:

"1. If the sole surviving parent is incarcerated are his children automatically dependent children within the meaning of the Ill. Rev. Stat. Ch. 37 §702—5(b) (1977) so that they become wards of the court, when the only evidence presented to the juvenile court revealed that the incarcerated parent requested that his sister care for his children during his incarceration, and that the sister was ready, willing and able to provide that care.

2. Do parents have an inherent right to designate that a family member should take care of his children during his absence, if that family member is ready, willing and able to provide that care."

■■ Michael Lenza's initial argument is that the evidence contained in the stipulated facts is insufficient to establish deficiency based upon section 2—5(1)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(b)). Specifically he contends that his life imprisonment in

Missouri for murder does not establish that his two children are without proper care because of his physical and/or mental disability. In support of this position he relied upon an Illinois Attorney General's opinion wherein the question was asked, "is imprisonment physical or mental disability of a parent?" The Illinois Attorney General's office answered in the negative. (1968 Ill. Att'y Gen. Op. 110 (No. 2020).) We disagree with the position taken by the Illinois Attorney General. We agree with the natural father that his felony conviction and imprisonment does not deprive him of all of his rights. Under the facts of the present case the Lenza children were without parents for an indeterminable period of time. The natural father's life imprisonment, coupled with the mother's death, leaves the Lenza children without the day-to-day guidance, love, and parental care that all children need and demand. Whenever children lose their parents, as in this case, it is the duty of this State to step in as *parens patriae* to see to it that the children receive proper care. The father's life imprisonment in this case is more than just a disadvantage, it is a disability which will support a dependency finding pursuant to 2—5(1)(b) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(1)(b)).

Michael Lenza has argued the applicability of the case of *In re State ex rel. Valdez* (1973), 29 Utah 2d 63, 504 P. 2d 1372. In *Valdez* under facts very similar to those of the case at bar it was held that the natural father's imprisonment following a conviction for murder of his wife would not support a finding that his children were dependent within the meaning of the Utah statute. We have compared the applicable Utah statute (Utah Code Ann. §55—10—64 (18) (1953)) with our Illinois statute section 2—5(b) of the Juvenile Court Act (Ill. Rev. Stat. 1977, ch. 37, par. 702—5(b)) and find the two to be significantly different. Accordingly, we believe the *Valdez* case is distinguishable and not controlling.

■■ The natural father's final contention is that he has an inherent right as a parent to designate that a family member take care of his children during his life imprisonment. It is not disputed that Michael Lenza gave a power of attorney to his sister, Mrs. Marcia Bolte, to care for his children and that she is ready, willing, and able to provide such care, and that a parent has the inherent right to the custody of his children. (*In re Adoption of Vienup* (1976), 37 Ill. App. 3d 217, 345 N.E.2d 742.) However, we do not believe this inherent right can be extended so as to allow an absolute assignment of that inherent parental right of custody to someone other than the other natural parent. We recognize for example that such an assignment of custody is usually recognized to the other parent in a marriage dissolution setting, but we are reluctant to extend it beyond such a factual situation.

■■ Michael Lenza has argued that by analogy his right to choose

substitute parents, like choosing a temporary babysitter while the parents are temporarily away, should not be infringed upon by the State. The fallacy of his argument is that in the present case his life imprisonment and the children's mother's death is far from a temporary situation. Because the present situation is one of considerable permanency as far as the minor children are concerned, we will not allow the power of attorney given by the father to overcome the State's legitimate interest in the Lenza children as *parens patriae*. This appeal is only from the adjudicatory hearing which found that the two Lenza children were dependent. We affirm that finding. The power of attorney given by Michael Lenza to his sister will certainly be relevant at the dispositional hearing to determine the ultimate custody of the children and should be considered at that time.

The record reflects that the trial court found that the Lenza children were dependent and then found that it was in their best interests for custody to remain with the Bryants. In viewing this aspect of the trial court's judgment, we give consideration to the trial court, who had the opportunity to observe all the parties and witnesses first hand (*People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201, 247 N.E.2d 417). Consideration was also given by the trial court to the natural ties that had developed between the Lenza children, who were very young when the Bryants assumed their custody. (*In re Ross* (1975), 29 Ill. App. 3d 157, 329 N.E.2d 333.) We find no error in the judgment of the trial court with regard to this juvenile dependency proceeding.

Prior to the oral argument in these appeals, the Bryants filed objections to the consolidated brief of the guardian ad litem. These objections and the formal response thereto, which were ordered taken with the case, have been considered in the preparation of this opinion.

For the reasons stated the judgment of the Circuit Court of Will County in appellate case No. 79-261 is also affirmed.

Affirmed in part and remanded with directions in No. 78-471; affirmed in No. 79-261.

ALLOY, P. J., and STENGEL, J., concur.