663 N.E.2d 58 (1996)
278 Ill. App.3d 476
215 Ill.Dec. 308
In re A.D.W., a Minor, (The People of the State of Illinois, Petitioner-Appellee, Napoleon Williams, Respondent-Appellant).
No. 4-95-0440.
Appellate Court of Illinois, Fourth District.
March 15, 1996.
*59 Richard A. Hopkins, Willoughby, Latshaw & Hopkins, P.C., Decatur, for Napoleon Williams.
Lawrence R. Fichter, State's Attorney, Decatur, Norbert J. Goetten, Director, State's Attorneys Appellate Prosecutor, Robert J. Biderman, Dep. Dir., State's Attorneys Aplt. Prosecutor, Springfield, Leslie Hairston Staff Attorney, State's Attorneys Appellate Prosecutor, Springfield, for A.D.W. and the people.
Justice GARMAN delivered the opinion of the court:
Respondent Napoleon Williams appeals from an order of the circuit court of Macon County, adjudicating his 17-month-old daughter, A.D.W., neglected and dependent. He argues the trial court erred (1) in its findings at the shelter-care hearing; (2) in denying his request for a shelter-care rehearing; and (3) in its findings at the adjudicatory hearing. We disagree and affirm.
On November 29, 1994, the State filed a petition alleging A.D.W. was dependent as she was without parent, guardian, or legal custodian (705 ILCS 405/2-4(1)(a) (West 1994)) and neglected, in that her environment was injurious to her well-being (705 ILCS 405/2-3(1)(b) (West 1994)). A shelter-care hearing was held on December 2, 1994. Respondent was unable to attend due to his incarceration at Lincoln Correctional Center (Lincoln) in Logan County, Illinois. Mildred Jones, A.D.W.'s mother, was present at the hearing in the custody of the sheriff.
The trial court found probable cause to believe A.D.W. was dependent and neglected, and that it was a matter of immediate and urgent necessity to place her in shelter care and that reasonable efforts could not prevent the removal of A.D.W. from her mother or father since they were incarcerated. The trial court also named the Department of Children and Family Services (DCFS) as temporary custodian and authorized DCFS to place A.D.W. with her grandmother.
On January 6, 1995, respondent was released from Lincoln. On January 10, 1995, he requested a shelter-care rehearing pursuant to sections 2-10(3) and 2-10(4) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-10(3), (4) (West 1994)). Rehearing was set for January 12, 1995, with respondent to give notice. The court also mailed a copy of the docket entry to respondent's last known address. On January 12, 1995, respondent was not present in court for the rehearing. The trial court ruled that he failed to give notice to the parties entitled to notice and, therefore, under the circumstances did not have a right to a hearing at that time. On January 20, 1995, the docket entry mailed to respondent was returned to the court showing that respondent moved without leaving a forwarding address.
*60 On May 24, 1995, the trial court held an adjudicatory hearing. Both respondent and Jones were present at the hearing, in the custody of the sheriff's department. At the beginning of the proceedings, the trial court took judicial notice of case No. 90-CF-602 (People v. Williams (Cir.Ct. Macon Co.), No. 90-CF-602), a battery conviction against respondent for fondling his stepdaughter's breasts, and case No. 92-J-98 (In re U.D.W. (Cir.Ct. Macon Co.), No. 92-J-98), in which respondent's older daughter was adjudged neglected and taken into protective custody. The State asserted these cases were the basis for injurious environment to A.D.W.
Sharon Campbell, first-shift sergeant in the corrections division of the Macon County sheriff's department, testified that she was the record keeper of entrances and exits from the prison. She stated that respondent had been arrested and incarcerated on May 15, 1995, and remained incarcerated as of the date of the hearing.
Carol Tracey Lee testified she was a child-welfare specialist and child-protective investigator with DCFS and that she worked with the family from July 1992 through February 1995. She stated that on several occasions she requested respondent to participate in counseling to address sexual abuse issues. Respondent refused her requests, even though counseling was available to him at minimal or no cost. On cross-examination, Lee testified that DCFS conducted an investigation regarding respondent and Jones after A.D.W.'s birth and the results showed A.D.W. was not at risk. She admitted that prior to the shelter-care hearing she learned Jones had given her mother consent for A.D.W.'s medical treatment. She also admitted that she never spoke with Jones regarding appointment of a guardian for A.D.W. At the time of the hearing, she did not know if Jones' mother had filed for guardianship over A.D.W.
Scott McAdams testified that he was a child-welfare specialist with DCFS assigned to respondent's case in February 1995. He attempted to persuade respondent to seek sexual abuse counseling and met with him on two or three occasions to discuss the matter. Respondent refused counseling because he did not feel it was necessary. McAdams was aware of DCFS reports investigating respondent for substantial risk of harm to his older daughter, which indicated risk of sexual penetration and sexual molestation. On cross-examination, McAdams stated he was also aware of an investigation regarding the risk of harm to A.D.W., which came back unfounded.
Respondent testified that DCFS conducted an investigation regarding the risk of harm to A.D.W. after she was born and determined the risk to be unfounded. Respondent stated that he had taken measures for A.D.W. to receive medical care if he or Jones were unable to care for her. No one from DCFS ever spoke with him concerning A.D.W.'s care. He explained that he refused to engage in counseling because DCFS had no basis for its request. On cross-examination, respondent admitted that he was incarcerated in November and December 1994 and released January 6, 1995.
Jones testified that no one from DCFS spoke to her about appointing a guardian for A.D.W. Had DCFS addressed the issue, she would have appointed her mother guardian. She also stated the DCFS investigation concerning risk of harm to A.D.W. came back unfounded. On cross-examination, she admitted she was aware of respondent's prior battery conviction.
The trial court found A.D.W. dependent, as she was without a guardian or someone to exercise parental responsibility. It noted it was the responsibility of the parents, not DCFS, to ensure that A.D.W. had a caretaker, and they did not do so. The trial court also found A.D.W. neglected, as there was a likelihood that she might come to harm and her environment was injurious to her welfare.
Immediately following the adjudicatory hearing, the trial court held a dispositional hearing and found respondent and Jones unable to protect or care for A.D.W. The trial court also determined that it was in the best interest of A.D.W. that she be made a ward of the court.
On May 26, 1995, the trial court entered (1) an adjudication order finding A.D.W. dependent *61 and neglected, and (2) a dispositional order declaring A.D.W. a ward of the court and granting guardianship to DCFS. On May 31, 1995, respondent filed notice of appeal.

I
Respondent first argues the trial court erred in its findings at the shelter-care hearing. We find the issue to be moot.
An appeal becomes moot where the issues involved in the trial court no longer exist because events occur which render it impossible for the reviewing court to grant effective relief. In re A Minor, 127 Ill.2d 247, 255, 130 Ill.Dec. 225, 228, 537 N.E.2d 292, 295 (1989). For example, an appeal challenging the sufficiency of evidence in a preliminary hearing would be deemed moot if the defendant was later indicted by a grand jury. See People v. Henderson, 36 Ill.App.3d 355, 378, 344 N.E.2d 239, 258 (1976). In this case, there is no relief available to respondent. Even if we were to determine the trial court erred at the shelter-care hearing, DCFS would still retain custody of A.D.W. pursuant to the findings at the subsequent dispositional hearing.
Respondent correctly notes that a court may consider moot issues if they involve a question of great public interest or if they are capable of repetition, yet evading review. See A Minor, 127 Ill.2d at 257, 130 Ill.Dec. at 229, 537 N.E.2d at 296. Courts consider the public nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question. In re E.G., 133 Ill.2d 98, 105, 139 Ill.Dec. 810, 813, 549 N.E.2d 322, 325 (1989). Yet, respondent fails to explain how the public interest exception applies in this case, and our review of the record reveals no reason to employ it here.
However, we are inclined to address some of the language of respondent's brief which we find unsettling. In particular, we are troubled by the serious allegations made against Lee and the trial court. In his brief, counsel accuses Lee of "deceitful evasiveness" and suggests that she misrepresented facts during her testimony. Counsel also alleges that the trial court lacked diligence in conducting the shelter-care hearing, effectively providing DCFS with an unfair advantage in the proceedings.
After reviewing the record, we find counsel's allegations totally unsupported. We also recommend that counsel exercise greater care before making such grave accusations in the future. As Justice Warren E. Burger once noted, "[L]awyers who know how to think but have not learned how to behave are a menace and a liability not an asset to the administration of justice." Address by Justice Warren E. Burger to the American Law Institute (reported in the National Observer (May 24, 1971)).

II
Respondent next argues the trial court erred when it denied his request for a shelter-care rehearing, based upon his failure to give notice. He contends he could not give notice of the rehearing because he did not receive notice from the court. He points out that the docket entry mailed to him on January 11, 1995, was returned to the court showing that he moved without leaving a forwarding address.
For the same reasons as discussed in part I, we also find this issue moot. Even if we agreed with respondent regarding the rehearing, there is no relief available to him. DCFS would still retain custody of A.D.W., pursuant to the subsequent dispositional hearing.
Furthermore, respondent's argument is without merit. The Act provided respondent with adequate notice. Section 2-10(4) of the Act states that "the clerk shall set the matter for rehearing not later than 48 hours, excluding Sundays and holidays, after the filing of the affidavit." 705 ILCS 405/2-10(4) (West 1994).
Respondent filed his affidavit in support of a rehearing on January 10, 1995, and the matter was set for hearing on January 12, 1995. After citing section 2-10(4) of the Act in his affidavit, respondent cannot now argue that he had no idea when the rehearing would be held. The very language of the Act *62 indicated that it would be held within the next 48 hours. Further, his affidavit even requested that the matter be placed on the docket within 48 hours. Thus, there can be no question that respondent was on notice that the rehearing would be held shortly after he filed his affidavit. Moreover, he could have easily discovered when it would be held and, considering it was his request, it was his responsibility to do so.

III
As his final argument, respondent contends the trial court erred in finding A.D.W. neglected and dependent at the adjudicatory hearing. He maintains the evidence did not support a finding of dependency and, further, it would not have been at issue had the trial court conducted a shelter-care rehearing. He also maintains the evidence did not support a finding of neglect.
We first address the issue of dependency. Section 2-4(1)(a) of the Act defines a dependent minor as one "who is without a parent, guardian or legal custodian." 705 ILCS 405/2-4(1)(a) (West 1994). Dependency need only be proved by a preponderance of the evidence. In re J.J., 246 Ill. App.3d 143, 151, 186 Ill.Dec. 23, 28, 615 N.E.2d 827, 832 (1993). A trial court's determination of dependency will not be overturned unless it is manifestly erroneous. J.J., 246 Ill.App.3d at 151, 186 Ill.Dec. at 28, 615 N.E.2d at 832.
In this case, evidence showed that both respondent and Jones were incarcerated at the time of the hearing. Thus, it was undisputed that A.D.W. had no parent or legal guardian to care for her. Based upon these facts, we believe the trial court's finding of dependency was fully supported. See Bryant v. Lenza, 90 Ill.App.3d 275, 282, 45 Ill.Dec. 572, 577, 412 N.E.2d 1154, 1159 (1980) (parent's imprisonment supported finding of dependency). Further, respondent is mistaken in his contention that dependency would not have been at issue if the trial court had conducted a shelter-care rehearing. We fail to see how a rehearing would have changed the fact that respondent was incarcerated and unable to provide care for A.D.W. at the time of the adjudicatory hearing.
We next address the issue of neglect. The law in Illinois is well settled that a trial court's determination of neglect is entitled to great deference and will not be disturbed on appeal unless contrary to the manifest weight of the evidence. In re F.W., 261 Ill.App.3d 894, 897, 199 Ill.Dec. 769, 772, 634 N.E.2d 1123, 1126 (1994); In re B.M., 248 Ill.App.3d 76, 79, 187 Ill.Dec. 783, 785, 618 N.E.2d 374, 376 (1993). In making its determination, a trial court may consider evidence of the abuse or neglect of another minor. See 705 ILCS 405/2-18(3) (West 1994); In re Harpman, 146 Ill.App.3d 504, 514, 100 Ill.Dec. 177, 183, 496 N.E.2d 1242, 1248 (1986).
Evidence presented in this case showed that respondent had a prior battery conviction for fondling the breasts of his stepdaughter. Based upon this conviction, his older daughter was adjudged neglected and taken into protective custody. Further, respondent was uncooperative with DCFS and refused to engage in sexual abuse counseling, maintaining that he did not have a problem. In our opinion, these facts demonstrate an injurious environment and support a finding of neglect. Hence, we hold the trial court's findings were not against the manifest weight of the evidence.

IV
For the foregoing reasons, we affirm the order of the circuit court of Macon County.
Affirmed.
STEIGMANN and McCULLOUGH, JJ., concur.