*In re* D.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Iva Sue Hollis, Respondent-Appellant).

Fourth District    No. 4—04—0556

Opinion filed December 23, 2004.

APPLETON, J., dissenting.

Robert E. McIntire, Public Defender, of Danville, and Kimberly Edwards Blakely, of Rossville, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Respondent mother, Iva Sue Hollis, appeals following the order of the Vermilion County circuit court making D.S. (born March 2, 2004) a ward of the court and placing custody and guardianship of him with the Department of Children and Family Services (DCFS). Respondent argues the trial court erred in holding an *ex parte* temporary-custody hearing and the court lacked subject-matter jurisdiction. We affirm.

On March 3, 2004, the State filed a petition for adjudication of wardship as to D.S., alleging he was a neglected minor pursuant to section 2—3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2—3(1)(b) (West 2002)). Specifically, the petition alleged D.S. was neglected in that his environment was injurious to his welfare due to respondent having an open case with DCFS regarding six of her other children in which she had been found unfit.

On March 3, 2004, the trial court held an *ex parte* temporary-custody hearing, where Jacqui Walters, respondent's caseworker for the pending terminations as to respondent's other children, testified that respondent had given birth to D.S. the previous day in Crawfordsville, Indiana. Walters further testified she was unable to give respondent notice of the proceedings because she was unsure what hospital respondent was in. The court found an immediate and urgent need for temporary custody of D.S. to be given to DCFS based on the prior findings of neglect as to six of respondent's other children and the court's belief respondent was attempting to conceal D.S.'s birth and flee Illinois.

On March 10, 2004, the trial court held a second temporary-

custody hearing, at which respondent was present. At that hearing, Walters testified that part of the basis of the pending terminations as to six of respondent's other children was her diagnosis with borderline personality disorder, antisocial disorder, and psychotic features. At the conclusion of the hearing, the court again found an immediate and urgent necessity that D.S. be removed from respondent. The court placed temporary custody of D.S. with DCFS.

On April 16, 2004, the trial court held an adjudicatory hearing at which Ann Kapella, a child-protection investigator with DCFS, testified respondent told her she had decided to leave Illinois immediately preceding D.S.'s birth out of fear Illinois authorities would take D.S. should he be born in Illinois. Respondent left for Tennessee despite the fact her doctor had directed her to go to Covenant Hospital in Champaign to give birth. Respondent got to Crawfordsville, Indiana, where she went into labor and was forced to go to a hospital. At the conclusion of the hearing, the court found D.S. was neglected due to an injurious environment based on respondent's behavior around the time of D.S.'s birth—fleeing Illinois instead of checking into the hospital.

On May 27, 2004, the trial court held a dispositional hearing, where it found it to be in D.S.'s best interest he be adjudicated neglected and made a ward of the court.

On appeal, respondent states the issue presented for review as whether the trial court lacked jurisdiction to award DCFS custody of D.S. the day after his birth in Indiana when the child had never been physically present in Illinois. However, no argument with respect to how D.S.'s birth in Indiana deprives Illinois's courts of jurisdiction appears in the body of respondent's brief, so this issue is forfeited. See 210 Ill. 2d R. 341(e)(7) (an appellate brief must contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on").

■ Forfeiture notwithstanding, we find the trial court had jurisdiction. Section 2—1 of the Juvenile Court Act provides: "Proceedings may be instituted under the provisions of this Article concerning boys and girls who are abused, neglected or dependent, as defined in Section[ ] 2—3 or 2—4." 705 ILCS 405/2—1 (West 2002). Therefore, to invoke the court's subject-matter jurisdiction under the Juvenile Court Act, the proceedings must concern a child who is abused, neglected, or dependent. Here, the petition for adjudication of wardship as to D.S. alleged he was neglected pursuant to section 2—3(1)(b) of the Juvenile Court Act. This allegation is sufficient to bring this case within the court's subject-matter jurisdiction.

254

Additionally, the trial court properly exercised jurisdiction under section 201(a)(2) of the Uniform Child-Custody Jurisdiction and Enforcement Act (the Act) (Pub. Act 93—108, § 201, eff. January 1, 2004 (2003 Ill. Legis. Serv. 1214, 1218)) (adding 750 ILCS 36/201 (West Supp. 2003)) (child has no home state and respondent has a significant connection with Illinois). We note that jurisdiction could also be found under section 201(a)(4) (750 ILCS 36/201(a)(4) (West Supp. 2003)) (no court of any other state has jurisdiction on any of the other bases in section 201(a)).

We do not find that Indiana was D.S.'s home state under the Act, as we do not find D.S. lived in Indiana with respondent from birth. See 750 ILCS 36/102(7) (West Supp. 2003). It was by mere happenstance D.S. was born in Indiana as respondent drove through that state, and he was taken into protective custody within a day of birth. See *In re R.P.*, 966 S.W.2d 292, 300 (Mo. App. 1998) (for a state to be considered child's home state under Uniform Child-Custody Jurisdiction and Enforcement Act, more is required than the mother and newborn child staying at the same hospital for a brief period).

■ Respondent's first substantive argument is that the trial court erred by holding the March 3, 2004, temporary-custody hearing *ex parte* because DCFS knew how to get in contact with respondent and should have given her notice of the hearing. We find this issue is moot.

"An appeal becomes moot where the issues involved in the trial court no longer exist because events occur which render it impossible for the reviewing court to grant effective relief." *In re A.D.W.*, 278 Ill. App. 3d 476, 480, 663 N.E.2d 58, 61 (1996). Here, while the trial court held an *ex parte* hearing on March 3, 2004, at which it placed custody of D.S. with DCFS, the court held a second custody hearing on March 10, 2004, which respondent attended. See 705 ILCS 405/2—10(3) (West 2002). Because the court held a second custody hearing, which respondent attended, any deficiency in notice as well as any findings at the first hearing are moot.

■ Respondent next argues the trial court lacked subject-matter jurisdiction because DCFS presented no evidence at the *ex parte* custody hearing from which the court could have found D.S. was neglected. Respondent's argument appears to be that the court was required to find D.S. neglected at the initial custody hearing to exercise jurisdiction at later hearings and that because DCFS presented insufficient evidence of neglect at the *ex parte* hearing, the court thereafter lacked jurisdiction. Respondent is incorrect. We have already addressed the court's subject-matter jurisdiction and found it exists.

Insofar as respondent argues the evidence at the *ex parte* custody hearing was insufficient for the trial court to find probable cause D.S.

was a neglected minor, those findings are also moot. See *A.D.W.*, 278 Ill. App. 3d at 480, 663 N.E.2d at 61 (an appeal of findings made in a temporary-custody hearing is moot where a subsequent adjudication of wardship is supported by adequate evidence). Accordingly, the only issue capable of review is the adjudication of wardship.

Here, the trial court did not base its adjudication of D.S. solely on the fact respondent had terminations pending with respect to her other children. See *In re Arthur H.*, 212 Ill. 2d 441, 469 (2004) (fact evidence of neglect of one minor is admissible does not mean it is conclusive proof of neglect of another minor). In fact, the court stated:

> "[M]y finding is in no way based upon the findings of unfitness, nor is it based on the pendency of the cases in and of themselves. It's based on the fact that because of those findings and the pendency of those cases you took this drastic action to hide the birth of the child, and it was the things you did or failed to do in taking this drastic action to hide the birth of the child which created the environment which was injurious to his welfare *** ."

We find this was an adequate basis on which to find D.S. neglected and make him a ward of the court.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, J., concurs.

JUSTICE APPLETON, dissenting:

I respectfully dissent from the disposition reached by the majority and would find the courts of Illinois were, at the inception of this cause, completely devoid of either subject-matter or personal jurisdiction.

D.S. was born in Indiana, and the case before us concerns only the first 24 hours of his life. At his birth in Crawfordsville, Indiana, and for the length of his life until he was placed into the custody of DCFS, he had never lived in the State of Illinois. His *only* state of residence was Indiana. The majority cannot use the general language quoted from section 2—1 of the Juvenile Court Act (705 ILCS 405/2—1 (West 2002)) to avail this state of jurisdiction. To use that language in such a way would, for instance, give the Vermilion County circuit court jurisdiction over the children of California in the event DCFS considers one or more of them to be abused, neglected, or dependent. To so hold would be absurd and contrary to our federal system of government. Simply put, the Illinois legislature has no authority to subject the children of another state to its laws. Nor may safe harbor be found

in section 201 of the Act (750 ILCS 36/201 (West Supp. 2003)). D.S. had a home state at his birth—the State of Indiana. It was the only state in which he had ever resided. This determination is buttressed by the definitions found in this same Uniform Act:

"In the case of a child less than six months of age, the term ['home state'] means the state in which the child lived from birth with [a parent]." 750 ILCS 36/102(7) (West Supp. 2003).

Here, the child lived for 24 hours with his mother in Indiana.